ORIGINAL

FILED
U.S. DISTRICT COURT

2009 JUL 23 AM 8:26

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| TERRY LAMAR BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 309-022 |
| | ) | |
| MARY ALSTON, Johnson State Prison, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at the Columbia Care Center, in Columbia, South Carolina, filed the above-captioned case pursuant to 42 U.S.C. § 1983.[1] Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants.[2] Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

---

[1] While Plaintiff is currently incarcerated at the Columbia Care Center, at the time of the events alleged in his complaint Plaintiff was incarcerated at Johnson State Prison ("JSP") in Wrightsville, Georgia.

[2] As explained in a simultaneously filed Order, Plaintiff was permitted to file a supplemental complaint. The Court will consider both Plaintiff's original (doc. no. 1) and supplemental complaint (doc. no. 3) in this screening.

## I. BACKGROUND

*Liberally* construing Plaintiff's amended complaint,[3] the Court finds the following. Plaintiff names the following Defendants: (1) Mary Alston, JSP, (2) FNU Lewis, Urologist at Augusta State Medical Prison, (3) FNU O'Neal, Nurse at JSP, (4) Keith Morris, Counselor at JSP, (5) FNU Schoolcraft, Psychiatrist at JSP, (6) FNU Hardin, Doctor at JSP, (7) FNU Souter, Medical Personnel at JSP, (8) and FNU Henderson, Doctor at JSP. (Doc. no. 1, pp. 1, 4; doc. no. 4).

Plaintiff's amended complaint addresses two different medical problems and the treatment he received regarding these medical problems, as well as general condition of confinement claims. As his medical problems occurred simultaneously, the Court will address the issues raised in Plaintiff's amended complaint by his medical problems, as opposed to chronologically.

Plaintiff's first medical problem concerns the purported misdiagnosis of an infection. (Doc. no. 1, p. 10). He claims to have exhausted his administrative remedies on this issue. In mid-October, 2007, Plaintiff saw Defendant Alston concerning some sores on his face and neck. (Id.). She diagnosed him with infantigo. (Id.). According to Plaintiff, several weeks later, Defendant Alston changed her diagnosis from infantigo to MRSA, a staph infection. (Id.). Plaintiff was treated for MRSA with antibiotics. (Id.). However, the sores would not go away. (Id.). On May 30, 2008, Plaintiff was sent to ASMP, where he was seen by a dermatologist who diagnosed him with infantigo. (Id. at 15). Plaintiff was hospitalized

---

[3]For purposes of clarity, the Court will refer to Plaintiff's original complaint and his supplemental complaint as his "amended complaint."

2

immediately and treated. (Id.). Thereafter, Plaintiff was transferred back to JSP. (Id.). Plaintiff again was seen by the dermatologist for two follow up visits. (Id.). On the second follow up visit he was prescribed Lidocane and Vicodin for his pain. (Id.). Plaintiff alleges that Defendant Alston would not give him the medication for his pain, "[A]nd it took forever to get [] the Lidocane." (Id.).

Plaintiff comments that it appeared that Defendants Alston and Hardin lost interest, presumably concerning Plaintiff's infantigo, and continued to treat him for MRSA. (Id.). However, on February 1, 2009, Plaintiff was seen by a new doctor, Defendant Henderson. (Id.). Plaintiff explained to Defendant Henderson that he "was getting long stringy things coming to heads in [his] sores." (Id.). Plaintiff also told Defendant Henderson, that when Plaintiff explained this symptom to Defendant Hardin, he (Defendant Hardin) referred Plaintiff to the psychiatrist, Defendant Schoolcraft. (Id.). Plaintiff notes that Defendant Schoolcraft saw Plaintiff approximately three times over a period of six months, and each visit lasted approximately five minutes. (Id. at 11). Defendant Schoolcraft changed Plaintiff's diagnosis to Factitious Disorder. (Id.). Plaintiff disagrees with this diagnosis and believes that his diagnosis was changed in retaliation for his filing a previous civil rights lawsuit against some of the prison officials and staff. (Id.).

Although, initially, Plaintiff was pleased with the treatment he received from Defendant Henderson[4] (doc. no. 1, pp. 11-12), he now states that his infection/sores continue

---

[4]Plaintiff states that after he explained his circumstances to Defendant Henderson, he (Defendant Henderson) "believed that things were coming from my sores...." (Doc. no. 1, p. 11). Plaintiff maintains that Defendant Henderson then expressed that he would change Plaintiff's medical treatment. (Id.). According to Plaintiff, after two weeks of his new treatment under Defendant Henderson, he began to notice his sores healing. (Id. at 12).

3

to spread (doc. no. 4, p. 3). He complains that "they" discontinued certain medication prescribed by Defendant Henderson because of medication he was taking for his mental health. (Id.). He again requests to be seen by a specialist. (Id.). Notably, Plaintiff acknowledges that the events concerning Defendant Henderson alleged in the supplemental complaint, occurred after he initiated the above lawsuit. (Id. at 2).

Plaintiff also alleges that Defendant O'Neal told him – while treating his sores – that "they" had documents that showed that Plaintiff was "digging [at his] sores" and that was the reason his sores would not heal; notably, Plaintiff agreed with that "to a certain point." (Doc. no. 1, p. 11). Plaintiff further states that Defendant O'Neal, instead of treating Plaintiff's sores, ran him out of the treatment room without a bandage on his open sores. (Id.). Plaintiff maintains that Defendant O'Neal has some sort of personal vendetta against Plaintiff; he notes that she is the same nurse who reported him for abusing his pain medication. (Id.).

Plaintiff's second medical problem concerns his right testicle. Plaintiff notes that he has a cyst on his right testicle, and "medical doesn't seem to be concerned." (Id. at 8). In light of Plaintiff's medical history and the problems he had concerning his left testicle, which resulted in its removal, Plaintiff requests prompt attention. (Id. at 8-9). Plaintiff expresses his dissatisfaction with the effectiveness of the grievance administrative procedure, namely that the prison officials delay in returning their responses to the grievances and appeals. (Id. at 8). Accordingly, Plaintiff states that he cannot wait on the investigation concerning his appeal to run its course, and therefore, Plaintiff filed his complaint prior to exhausting his administrative remedies. (Id.).

Next, Plaintiff states that in February 2009 he was hurting very badly as a result of

4

his sores and he had a panic attack. (Doc. no. 4, p. 2). He claims he went to Defendant O'Neal for treatment, but Defendant O'Neal told him there was nothing wrong with him; and she gave Plaintiff a disciplinary report for lying, insubordination, and feigning illness. (Id.). Plaintiff also raises issues concerning his general conditions of confinement, presumably related to the disciplinary report noted above. Plaintiff state that he was given a thirty-day store and phone restriction, and was placed in involuntary "lock down." (Id.). Plaintiff maintains that he is not being provided with pain medication. (Id. at 2). Plaintiff notes that these occurrence all happened after he filed the above-captioned case. (Id.).

## II. DISCUSSION

A.  **Un-Exhausted Claims**

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321 (1996), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and

other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 548 U.S. 925 (2006). Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 Fed. App'x 918, 920 (11th Cir. Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001); Jackson v. Dist. of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999). Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Here, Plaintiff admits that he has failed to complete the exhaustion process

6

concerning his second medical problem, as well as the allegations raised in his supplemental complaint, prior to filing suit. He contends that he could not afford to wait for the conclusion of the appeal process before filing his complaint concerning his right testicle, and he admits that the facts alleged in the supplemental complaint occurred after he commenced the above case.

As exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the administrative process *before* initiating this suit; thus, his claims regarding his second medical problem and allegations raised in his supplemental complaint should also be dismissed without prejudice.[5] As the claims regarding Defendant Henderson are not exhausted, he should be dismissed.

### B. Procedures and Grievance Claims

To the extent Plaintiff alleges that his constitutional rights were violated by Defendant Morris and/or other prison officials because his grievances and appeals were mishandled as to their investigation or otherwise processed in a manner that did not comply with the Department of Corrections grievance procedures, his claim must fail. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731

---

[5]To the extent Plaintiff is attempting to reassert his claim concerning his left testicle, the same claim Plaintiff raised in Baker v. Alston, Civil Case No. 308-034 (S.D. Ga. Mar. 31, 2008 ) (hereinafter "CV 308-034"), his claim is due to be dismissed. First, Plaintiff concedes that he did not exhaust this claim. (Doc. no. 1, p. 9). Indeed, this claim was dismissed in CV 308-034 for failure to exhaust. The Court is aware that Plaintiff submitted a grievance dated December 20, 2008, in which he explains the issues he had concerning his left testicle, but a careful reading of the grievance reveals that Plaintiff is concerned about the cyst on his right testicle and seeks medical attention for his right testicle. (Doc. no. 7, p. 7).

(W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (*per curiam*) is instructive on this point. In that case, the plaintiff alleged numerous claims, including a violation of "the grievance procedures established by the State Department of Corrections." Id. at 1467. Addressing the plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

In this case, Plaintiff complains that the administrative remedies are flawed because the prison officials delay in returning their responses to grievances and appeals. However,

alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances.... [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. Therefore, Plaintiff's claims against Defendant Morris regarding an alleged violation of the grievance procedures, fail as a matter of law and should be dismissed.

C.  **Defendant Souter**

Plaintiff has also sued Defendant Souter. Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that the complaint fails to state a claim for relief against this Defendant. That is, while Plaintiff names Defendants Souter as a Defendant, he does not assert any allegations of wrong doing regarding this Defendant in his statement of claims. In fact, Plaintiff does not mention Defendant Souter anywhere in his statement of claims. "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). The Eleventh Circuit has held, a district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1222-23 (11th Cir. 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in

9

pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."))). Thus, in the absence of an allegation of any connection between any actions of Defendant Souter with any alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against this Defendant. On that basis, Defendant Souter should be dismissed.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's claim concerning his right testicle, and his claims that occurred subsequent to his filing this case, be **DISMISSED** without prejudice for failure to exhaust administrative remedies, and that Defendants Souter, Morris, Lewis, and Henderson be **DISMISSED**.[6]

SO REPORTED and RECOMMENDED this 23rd day of July, 2009, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[6]In a simultaneously filed Order, the Court has directed service of process on Defendants Alston, Hardin, and O'Neal for Plaintiff's deliberate indifference claims concerning his first medical problem regarding his infantigo, as well as Plaintiff's claim for retaliation against Defendant Schoolcraft.