ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| TERRY LAMAR BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 309-022 |
| | ) | |
| MARY ALSTON, Doctor at Johnson State Prison, et al., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently at Men's State Prison, in Hardwick, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983.[1] Plaintiff is proceeding *pro se* and *in forma pauperis*. The matter is presently before the Court on Defendant Schoolcraft's "Motion to Dismiss." (Doc. no. 29). Plaintiff has responded to the motion (doc. nos. 39, 41),[2] and Defendant Schoolcraft filed a reply (doc. no. 40). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendant Schoolcraft's motion to dismiss be **GRANTED**.

---

[1] While Plaintiff is currently incarcerated at Men's State Prison, at the time of the events alleged in his complaint Plaintiff was incarcerated at Johnson State Prison ("JSP") in Wrightsville, Georgia.

[2] Plaintiff also attached copies of informal and formal grievances pertaining to the above-captioned case to his "Motion To Show Proof Of Exhaustion" (doc. no. 7). Accordingly, in addressing Defendant Schoolcraft's motion to dismiss for lack of exhaution, the Court has also considered that information.

I.  BACKGROUND

Plaintiff's amended complaint[3] addressed the alleged actions of various Defendants, two different medical problems, the treatment he received regarding these medical problems, as well as general condition of confinement claims. As Defendant Schoolcraft is the only Defendant who has moved for dismissal,[4] the Court will address only those claims relating to him.

One of Plaintiff's medical problems concerns the purported misdiagnosis of an infection. (Doc. no. 1, p. 10). In mid-October, 2007, Plaintiff was treated for some sores on his face and neck. (Id.). He was diagnosed with infantigo, but several weeks later, his diagnosis was changed to MRSA, a staph infection. (Id.). Plaintiff was then treated for MRSA with antibiotics. (Id.). However, according to Plaintiff, the sores would not go away. (Id.). On May 30, 2008, Plaintiff was sent to Augusta State Medical Prison ("ASMP"), where he was seen by a dermatologist who diagnosed him with infantigo. (Id. at 15). Plaintiff was hospitalized immediately and treated. (Id.). Thereafter, Plaintiff was transferred back to JSP. (Id.).

On February 1, 2009, Plaintiff was seen by a new doctor, Defendant Henderson. (Id.). Plaintiff explained to Defendant Henderson that he "was getting long stringy things coming to heads in [his] sores." (Id.). Plaintiff also told Defendant Henderson, that when he had previously described this symptom to another doctor, that doctor referred Plaintiff to

---

[3]Plaintiff was permitted to file a supplemental complaint and the Court considered both Plaintiff's original (doc. no. 1) and supplemental complaint (doc. no. 3) in screening his claims.

[4]Defendant Schoolcraft is one of four named Defendants in this case.

2

a psychiatrist, Defendant Schoolcraft. (Id.). Plaintiff notes that Defendant Schoolcraft saw Plaintiff approximately three times over a period of six months, and each visit lasted approximately five minutes. (Id. at 11). Plaintiff further maintains that Defendant Schoolcraft changed Plaintiff's diagnosis to Factitious Disorder.[5] (Id.). Plaintiff disagrees with this diagnosis and believes that his diagnosis was changed in retaliation for his filing a previous civil rights lawsuit against some of the prison officials and staff. (Id.).

*Liberally* construing Plaintiff's amended complaint, the Court allowed Plaintiff's claim against Defendant Schoolcraft to proceed, finding that Plaintiff arguably stated a viable First Amendment claim of retaliation. Defendant Schoolcraft then filed his answer and the instant motion to dismiss.

In the motion to dismiss, Defendant Schoolcraft argued that with respect to the retaliation claim brought against him, Plaintiff failed to properly exhaust his administrative remedies. (Doc. no. 29). More specifically, Defendant Schoolcraft argued that Plaintiff not only failed to exhaust his administrative remedies, but he never filed any grievance, informal or formal, concerning his complaint of retaliation against Defendant Schoolcraft. (Id.).

Plaintiff conceded that he did not exhaust his administrative remedies as to this claim. (Doc. no. 39, p. 1). However, Plaintiff argued that he attempted to file an informal grievance, but Gail Powell, the medical administrator at JSP, informed him, in writing, that the retaliation claim against Defendant Schoolcraft was not grievable. (Id.). Interestingly, in Plaintiff's second response to Defendant Schoolcraft's motion to dismiss, he claimed that he did file an informal grievance, but Ms. Powell "shot down the informal grievance by

---

[5]Plaintiff never revealed what his diagnosis was prior to the change.

3

saying it was non-grievable." (Doc. no. 41, p. 1). As such, Plaintiff claimed that he could not file a grievance concerning his complaint against Defendant Schoolcraft.[6] (Id.).

## II. DISCUSSION

### A. Applicable Legal Standard for Exhaustion

Where a defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, as Defendant Schoolcraft has here, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.
>
> . . . .
>
> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues. . . . The defendants bear the burden of proving that the plaintiff has failed to exhaust his administrative remedies. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings, the prisoner has exhausted his available administrative remedies.

Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 129 S. Ct. 733 (U.S. 2008)). Where exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes

---

[6]Additionally, Plaintiff alleged that he is working with an attorney from South Carolina, and this attorney has the copy of the informal grievance. (Doc. no. 41, p. 1). However, the record reflects that Plaintiff is proceeding *pro se*. Indeed, in a simultaneously filed Order, the Court denied Plaintiff's second request for the appointment of counsel.

4

so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

### B. The Administrative Grievance Process

Within the Georgia Department of Corrections, the administrative grievance process is governed by SOP IIB05-0001. Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. SOP IIB05-0001 § VI(B). The inmate has ten (10) calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. Id. § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. § VI(C)(2) & (D). The SOP requires that an inmate be given a response to his informal grievance within 10 calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id. § VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has thirty (30) calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has 5 business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety (90) calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(2),(5).

5

The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. Id.

### C. Failure to Exhaust Administrative Remedies

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act's ("PLRA") mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 92 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90-91 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 548 U.S. 925 (2006). Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 Fed. App'x 918, 920 (11th Cir. Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, an inmate must complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Following the Burnside test set forth *supra*, the Court first looks to Defendant Schoolcraft's factual allegations. See Burnside, 541 F.3d at 1082-83. Defendant Schoolcraft contended that Plaintiff failed to exhaust administrative remedies concerning his retaliation claim, the only claim against Defendant Schoolcraft. (Doc. no. 29). In reply, Plaintiff argued that he exhausted his administrative remedies to the extent available. (Doc. nos. 39, 41). More specifically, he alleged, though he has offered no evidence, that he attempted to grieve the issue, but was told by Ms. Powel that the retaliation claim against Defendant Schoolcraft was a non-grievable issue. (Doc. nos. 39, 41).

Here, the record is devoid of any grievance filed by Plaintiff, concerning any complaint he had against Defendant Schoolcraft. Rather, the record demonstrates that while at JSP, Plaintiff filed five grievances. (Doc. no. 29, Exs. 1-5). The five grievances filed by Plaintiff addressed complaints concerning his physical medical treatment. (Id.). None of the grievances address Defendant Schoolcraft, or any mental health treatment issues.

7

To the extent Plaintiff attempted to allege that he filed an informal grievance that was "shot down" by Ms. Powel, his argument must fail. First, the record is devoid of any such grievance. Second, although Plaintiff claimed that he had a copy of the purported informal grievance that was denied by Ms. Powel, he failed to file a copy in the record and thus has no evidence to support his claim.[7] Furthermore, Plaintiff's statement is unsworn.

In this regard, it is not improper for the Court to demand some evidence beyond Plaintiff's own self-serving statements showing that administrative remedies were not available. In Kozuh v. Nichols, No. 05-15207, 2006 WL 1716049, at *2 (11th Cir. June 22, 2006), the Eleventh Circuit rejected a prisoner's claim "that he was 'thwarted' when officials refused to respond to his grievances, leaving the grievance procedure unavailable." In rejecting Kozuh's argument for lack of evidence, the Eleventh Circuit noted the existence of contrary evidence that "Kozuh was able to file numerous informal complaints." Id. at *3. Here, there is no evidence that Plaintiff filed a grievance (informal or formal), and thus, there is no evidence that he started, let alone completed the grievance procedure as to his claim against Defendant Schoolcraft. Although Plaintiff maintained otherwise, there is ample evidence in the record from which to conclude that the grievance process was available to Plaintiff. Indeed, Plaintiff did exhaust his administrative remedies concerning other medical treatment complaints. Rather, it was Plaintiff who failed to avail himself of the administrative process concerning his claim against Defendant Schoolcraft. As such, Plaintiff failed to exhaust his

---

[7] The Court is aware of Plaintiff's statement that he is working with an attorney from South Carolina and that that attorney has the copy of the informal grievance. As previously noted, Plaintiff is proceeding *pro se* and thus was responsible for any pleadings filed in this case. Furthermore, as previously noted, there is nothing in the record to reflect that any such grievance or document exists.

administrative procedure concerning his sole claim against Defendant Schoolcraft. Therefore, Defendant Schoolcraft's motion to dismiss should be granted.

### III. CONCLUSION

Accordingly, for the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Defendant Schoolcraft's motion to dismiss be **GRANTED**, and that Defendant Schoolcraft be **DISMISSED** from this case.

SO REPORTED and RECOMMENDED this 25th day of February, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE